J. L. Zimmerman, for Amelia Roth.

Geo. Arthur, for Estate.

---

(Lucas County, Ohio, Common Pleas.)

STATE OF OHIO v. LEVI A. CASS.

---

*Libel—Prosecution of manager of newspaper owned by corporation—*

(1). To find the defendant guilty as charged, the jury must be satisfied beyond a reasonable doubt that the libelous article was published by the defendant intentionally or through some want of ordinary care and caution on his part in the conduct of the business of publishing said newspaper.

(2). It is not the office of an innuendo to add to the natural sense or import of the language used by the defendant, and if the indictment cannot be sustained on the ground of the natural and common meaning of the language, in its usual acceptation, or as pointed out by the preliminary statement, it cannot be aided by asserting by way of innuendo, the offensive meaning of the language.

(3). It is the provision of the court to say whether the language claimed to be libelous, will bear the interpretation so given to it by the innuendos; but it is for the jury to determine from the facts set forth in the indictment and the evidence before it whether this is the meaning of the language so used.

(4). If the jury find that the alleged libelous matter was true, and was published with good motives and for justifiable ends, then they must acquit the defendant.

(5). The defense that the alleged libelous matter was true and published for justifiable ends need not be proven beyond a reasonable doubt, but the defendant is only required to establish such defense by a preponderance of the evidence and by proof of acts independent of any mere public or other rumor.

(6). A publication is deemed malicious if done willfully and unlawfully and in violation of the just rights of another. From such willful and unlawful publication, malice is presumed.

---

CHARGE OF THE COURT.

PRATT, J.

Gentlemen of the Jury: The defendant, Levi A. Cass, is on trial upon an indictment in due form of law found against him by the grand jury of Lucas county, Ohio, charging "that prior to the fourteenth day of January, 1898, one Charles P. Griffin had been duly elected, qualified and served" as a representative of Lucas county, in the general assembly of the state of Ohio, from January, 1888, to January, 1896, continuously, and that he was in fact a representative of said county during the said years, discharging and did discharge his duties as such representative.

And the said jurors did further find and present in and by said indictment, that Levi A. Cass, the defendant herein, "unlawfully and maliciously contriving and intending to vilify and defame the said Charles P. Griffin as such representative and to bring him into public scandal and disgrace, and to injure and aggrieve him, the said Charles P. Griffin, as such representative, on the fourteenth day of January, 1896, in the said county of Lucas, did unlawfully and maliciously write and publish in a certain newspaper, called 'The Toledo Commercial,' printed and of general circulation in said county, a certain false, scandalous, malicious and defamatory libel," of and concerning said Charles P. Griffin and of and concerning him as such representative, and among other things, certain false, malicious, defamatory and libelous words, which are set forth in said indictment as follows:

"To the shame of the people of Toledo be it said, that Charles P. Griffin, after a career of corruption in the legislature [meaning thereby that the official acts of said Charles P. Griffin, while a member of the House of Representatives of the general assembly of Ohio as aforesaid, have been corrupt, dishonest and in violation of law] that has few parallels in this

country [meaning thereby that the official acts of the said Charles P. Griffin as aforesaid had been more corrupt, dishonest and illegal than the official acts of any other similar official in the United States with few exceptions] after it was known and admitted by some of his supporters even [meaning thereby that his constituents and people who had voted for him at the respective times whereby he was elected as a member of the House of Representatives] that he was notoriously, unblushingly corrupt [meaning thereby that his constituents aforesaid knew and admitted that he was corrupt and dishonest in his official acts as aforesaid], had a considerable following for re-election to another office." [Meaning thereby that his constituents as aforesaid voted for him to secure his re-election to another place of public official position and tust.] "To the great scandal, damage and reproach of the said Charles P. Griffin, and of the administration of his official duties as such representative."

To this indictment the defendant, Levi A. Cass, has pleaded not guilty, and has thus put in issue every allegation made against him in this indictment which is essential to constitute the offense with which he is so charged, and the burden is thereby thrown upon the state of Ohio, in order to convict the defendant, to sustain each and every essential element of the offense so charged against the defendant by evidence that shall be sufficient to prove the same to your satisfaction beyond a reasonable doubt.

The fact that the grand jury has found and returned such indictment against the defendant, raises no presumption of the guilt of defendant, and cannot be considered by you as any evidence whatever in support of any part of the allegations so made against him. In this country and under our laws, every person is presumed to be innocent of the commission of any crime or offense against its laws, and this presumption abides and remains with him as a shield from unjust punishment, during the whole course of any prosecution against him, and until in and by the due course of law he shall have been proven guilty of some charge made against him, by evidence showing him guilty of such charge beyond a reasonable doubt. And, in order that you may have clearly before you the meaning of the term "reasonable doubt" as you are to understand and apply it wherever I use it in the course of these instructions, I will, before going further, define it:

What is a "reasonable doubt?"

A verdict of guilty can never be returned without convincing evidence. The law is too humane to demand a conviction while a rational doubt remains in the minds of the jury. You will be justified and are required to consider a reasonable doubt as existing, if the material facts, without which guilt cannot be established, may fairly be reconciled with innocence. In human affairs absolute certainty is not always attainable. From the nature of things reasonable certainty is all that can be attained on many subjects. When a full and candid consideration of the evidence produces a conviction of guilt, and satisfies the mind to a reasonable certainty, a mere captious or ingenious artificial doubt is of no avail. You will look, then, to all the evidence, and if that satisfies you of the defendant's guilt, you must say so. If you are not fully satisfied, but find only that there are strong probabilities of guilt, your only safe course is to acquit.

What, then, is the offense with the commission of which the defendant here is charged? The statutes of this state provide, among other things, that whoever writes, prints or publishes any false or malicious libel of or concerning another, shall be punished criminally in the manner provided for by the statute, but that nothing written or printed shall be deemed a libel unless there is a publication thereof. A false and malicious publication in print against an individual, with intent to injure his reputation, and expose him to public hatred, contempt or ridicule, is a lib-

el.   In this indictment, as I have already stated, it is charged that on January 14, 1898, the defendant did write and publish in a newspaper printed and of general circulation in the city of Toledo, Lucas county, Ohio, called "The Toledo Commercial," the alleged libel, and the prosecution has on the trial before you produced and offered in evidence a copy of the issue of that newspaper, bearing that date, and given evidence tending to show that there was printed and published in said newspaper of that date and place the language which the indictment charges as constituting the alleged libel.   If you find from the evidence, beyond a reasonable doubt, that the said alleged libelous matter set forth in the indictment was on said date and in said county and state published in said newspaper, then you will proceed to inquire whether it was published as charged, by the defendant, Levi A. Cass.   As I have already, perhaps sufficiently advised you, in the special requests given you before the argument of this case by counsel, the defendant cannot be convicted of having printed and published said article unless something more is proven than that said article was so published in a newspaper published by a corporation of which he was the president or business manager.   It is not, however, necessary, in order to establish his responsibility for the publication of said article, if it was so published, to show that he personally wrote the article, or that he had actual knowledge of its having been written by another, or that he was actually engaged or participated in, or directly authorized or directed or consented to its publication.   But although it might be true that defendant had no knowledge of this specific article, and was not present when it was presented for publication, nor when it was published, he might still be liable criminally for its publication, unless he used reasonable care and caution in the conduct of his business, as president or business manager of the said corporation, to prevent such publication.

In order to find the defendant guilty as charged, the jury must be satisfied beyond a reasonable doubt that the libelous article was published by the defendant intentionally or through some want of ordinary care and caution on his part in the conduct of the business of publishing said newspaper. Whether in such case he would or would not be responsible for its publication, must be judged by you from the evidence before you by considering all the circumstances as they are disclosed to you by the evidence, under which the publication was made, and in which the defendant himself was placed at the time of the publication. What supervision or control over the said newspaper, and over the publication of articles inserted therein, did the defendant at and before the time of such publication exercise?   What was the course of said newspaper at times prior to this publication, in the same matters? What opportunities had the defendant for knowing of the insertion of any libelous article in such newspaper? What care or pains, if any, did the defendant take to be advised of or to ascertain whether said newspaper was being fairly and properly conducted?   All these circumstances and conditions may be considered by you, as you shall find them disclosed by the evidence before you, in determining whether the defendant either himself published, or participated in the publication of, or is criminally responsible for the publication of the alleged libelous matter.

If after considering all the evidence before you, you are not satisfied from such evidence beyond a reasonable doubt, that the defendant personally had knowledge of the publication of said article before or at the time of publication, or that he participated in such publication, and are further not so satisfied beyond a reasonable doubt, that under the rules which I have given you he is criminally responsible for such publication, then you will go no further in your consideration of the case, but will at once return a verdict that the defendant is not guilty.

But if, upon consideration of all

the evidence before you, you are satisfied beyond a reasonable doubt that he did publish, or is criminally responsible for the publication of the said alleged libelous matter in question, you will then in either event proceed to inquire whether it was published of and concerning the person named in the indictment, Charles P. Griffin; and if you so in like manner find, then you will further inquire and determine whether the allegations contained in said article, which are set forth in the indictment, constitute a false, scandalous, malicicus and defamatory libel of said Charles P. Griffin.

The indictment, after alleging as facts the election of said Charles P. Grffln to, and his service in the general assembly of the state of Ohio, for certain years therein named, as a representative from Lucas county, then charges that the defendant, unlawfully and maliciously contriving and intending to vilify and defame the said Charles P. Griffin as such representative, and to injure and aggrieve him, published the alleged libelcus article. The words so alleged to be libelous are set forth in the indictment, and in connection with the words so set forth and stated to have been published, are set forth certain statements as to the meaning thereof which in law constitute what is known and denominated as the innuendo, in which is set forth the meaning with which it is alleged the published words were used.

It is not the office of an innuendo to add to the natural sense or import of the language used by the defendant, and if the indictment cannot be sustained on the ground of the natural and common meaning of the language, in its usual acceptation, or as pointed out by the preliminary statement, it cannot be aided by asserting ever so strongly, by way of innuendo, the offensive meaning of the language.

You will have the indictment before you, and you will see the words published enclosed in quotation marks, and followed by the statements denominated "the innuendo," enclosed in brackets. Now, gentlemen, it is my province to say to you whether this language as so published will bear the interpretation so given to it by these innuendoes, and I do say to you that in law these words will bear the meaning so ascribed to them; but whether this is the meaning of the language so used, is for you to determine from the facts set forth in the indictment and the evidence before you as to such facts, construing the words used in their usual and ordinary sense and meaning, when applied to the circumstances under which they were so used as you shall, from the evidence, find such circumstances to have been. And in determining the meaning in which the alleged libelous words were used, you may, in connection with all the other circumstances proven, consider the entire article of which the part contained in the indictment formed a part. And I further say to you that if you so find they were used in the sense and meaning so alleged, then I instruct you as a matter of law that the language embodied in the indictment is of itself libelous, and tends to defame and degrade the person concerning whom it was published, and, being so libelous, malice on the part of the person publishing the same is presumed as a matter of law. If, therefore, you further find under the rules of law which I have given you, and under the evidence before you, beyond a reasonable doubt, that the defendant published the same, then he is guilty—unless you shall find, as a matter of defense, that the matter charged as libelous is true, and was published with good motives and for justifiable ends. The burden of proving that the matter charged as libelous is true, and was published with good motives and for justifiable ends is upon the defendant.

The term "malice," as here used in this connection, is not used in the popular sense of personal hatred or ill-will, but a publication is deemed malicious if done willfully and unlawfully and in violation of the just rights of another. From such willful and unlawful publication, malice is presumed. It is, however, provided by the constitution of the state of Ohio that in any criminal prosecution

for libel the truth may be given in evidence to the jury, and if it shall appear to the jury that the matter charged as libelous is true, and was published with good motives and for justifiable ends, the party charged shall be acquitted.

If, therefore, you find from the evidence in the case that the alleged libelous matter set forth in the indictment was true, and was so published with good motives and for justifiable ends, then even though you might otherwise under the rules given you find the defendant guilty, you will, by reason of such defense, acquit the defendant. In order to so acquit him by reason of this defense, the burden of proof to establish it is upon the defendant. He is not, however—as is the State on its part in making proof of the facts upon which it bases its prosecution—required, in order to establish this defense, to make such proof as shall establish the same beyond a reasonable doubt, but it is sufficient that he prove the matters constituting such defense by a preponderance of the evidence, as in a civil case. In order to be relieved from liability by reason of this defense, he is required to establish such defense by a preponderance only of the evidence and by proof of facts independent of any mere public or other rumor. That the matter charged as libelous is true, is not alone sufficient as a defense, but it must also appear by a preponderance of the evidence that the motive in publishing the truth was good, and the end sought by the publication was justifiable.

Now, gentlemen, taking the rules of law which I have now given you in connection with and in addition to the rules of law which I gave you before the argument of counsel was commenced in this case, you will enter upon the consideration of the evidence for the purpose of determining the facts to be determined by you under these instructions; and upon a consideration of the evidence under these rules of law, determine the guilt or innocence of the defendant of the offense here charged against him.

This case has occupied a consider-

able length of time, and a large amount of oral testimony has been placed before you in the examination of witnesses produced on behalf of the prosecution, and on behalf of the defense. There has been much discussion in your presence by counsel upon questions regarding the admission or rejection of evidence produced on the one hand and on the other; but in your consideration of the evidence in the case you will consider only and solely the evidence which the court has permitted to go before you; you will not allow yourselves to be influenced in any degree by anything that has been said by counsel upon either side, or by the court, in reference to the introduction or rejection of any evidence, but will fully, fairly and carefully consider all the evidence that the court has permitted to be given before you. You understand your duties in this respect, each and all of you—being regular jurors of this term, and having sat for a considerable length of time as such—and as jurors in the trial of causes submitted to you. It is not, however, improper that I should caution you that you lay aside every consideration except an earnest and honest desire to arrive at the facts presented to you and involved in your consideration of the several questions of fact which I have submitted to you in these instructions. I give you no opinion, and have no right to give you any opinion as to these facts, they being solely for your determination, and you on your part will take the principles of law which I have stated to you as being solely within my province, and not for you to question or dispute.

I will only further call your attention, as it is my duty to do, to testimony which has been given here with a view to affecting the credibility of some of the witnesses. Certain questions have been put to Mr. Griffin as a witness and certain testimony given in reference to what is known as the "Rogers Law," and in reference to action which it is claimed Mr. Griffin took in connection with the same after the expiration of his term of office as a legislator. The charge

[COPYRIGHT, 1899, BY CARL G. JAHN.]

made in the alleged libelous article having reference to Mr. Griffin's character and conduct while a legislator, holding such office, any evidence as to his action in any matters after he ceased to hold such office is only material in so far, if at all, as it may affect his character and credibility as a witness and the weight to be given to his testimony as such witness; and the testimony of the witness—Wright —given for the purpose of contradicting the witness Stansbury, can only be considered in so far as it may, if at all, affect the credibility of the witness Stansbury. The question as to the credibility of each and every witness is to be judged of by you, considering the relations of either or any of them or their interest in or opinion as to any of the matters here in question, the appearance and conduct of the witnesses upon the stand before you, and every thing that in your judgment, as men of common understanding and judgment, shall affect the weight which you are to give to the testimony of each and every one of them. Having fully and fairly considered all the evidence before you under the rules of law given you, you will find and determine whether the defendant is guilty of the offense with which he is charged, and if you so find, return a verdict of guilty; if you do not so find, return a verdict of not guilty.

*Requests given to the jury before argument.*

THE COURT.

Gentlemen of the Jury: Counsel have presented certain specific requests or rules of law, which they have asked me to give you before argument. In response to this request, I give the following as rules of law applicable to this case:

*Plaintiff's request No. 1.*

1. If you find that the defendant, on and prior to January 14, 1898, was the president of the Toledo Commercial Company, and that said company, on said January 14, 1898, published the article complained of in the indictment, you will then inquire what, if any, connection the defendant had with the publication of said article.

In order to charge the defendant with the responsibility of publishing said article, it is not necessary that he should have had actual knowledge of the proposed insertion of the particular libel, or that he should have been actually engaged in, or connected with, its insertion, or that he directly authorized, or participated in, or directly consented to its publication; but his responsibility for it must be judged by considering the circumstances in which he was placed, the course of the paper at prior times regarding the same matters or opportunities which he had of knowing of the probability of the insertion of any libelous article, together with the facts regarding his attention to the paper of which he was proprietor, whether he took any pains to be advised if it was conducted fairly and properly; all of these circumstances and conditions may be considered in determining his criminal responsibility for the libel inserted in his paper, which he in fact did not have a hand in inserting.

*Plaintiff's request No. 2.*

If you find that the defendant was the owner of the majority of the capital stock of the Toledo Commercial Company at the time of the publication of the article named in the indictment, and at the same time was the president of that company, and as such had the general management of the publication of the Toledo Commercial, and as such president and general manager had power to employ and discharge the managing editor and editorial writers thereon, and had power to control the policy of the paper in respect to the editorial department thereof, and if you further find that he was actually engaged in the management of the paper at or immediately prior or subsequent to the time of the publication of the article named in the indictment, then I say to you that the defendant was bound to use due and reasonable care to prevent the publication of libelous articles, and if the evidence satisfies you beyond a reasonable doubt that he failed to exercise such care to prevent such publication, then I charge

you as a matter cf law that the defendant is responsible for the publication in question.

*Plaintiff's request No. 4.*

The owner, publisher, manager or editor of a newspaper, having the power to control the policy thereof, and the right to determine what shall appear in the columns thereof, cannot escape liability for any libelous article appearing in the columns of the paper so under his control by merely employing others to write the article, or by the mere employment of a managing editor for such paper. If he in fact retains the power to control the policy of such newspaper and to decide upon the contents thereof, he is still liable for the publication of libelous articles although written or inserted by or under the direction of his subordinates, if by the exercise of ordinary care he could have prevented it.

*Plaintiff's request No. 5.*

General report or public rumor is not a justification for the publication of a libelous article concerning another; nor information or belief on the part of the person writing or publishing the article, and you will disregard all evidence of such general report or public rumors or information or belief, excepting so far as such information or belief may be founded upon independent facts, shown by the evidence in this case, tending to establish the truth of the charges in the article.

*Defendant's request No. 3.*

It is the duty of the proprietor or manager of a newspaper which is liable to be used for the publication of improper articles, to use ordinary and reasonable caution and care in the conduct of said newspaper, in order that no libels may be published therein; and he is criminally liable for a libelous publication in his said paper, unless the publication is made without his knowledge, authority or participation, and without carelessness on his part. If the libel is published in his paper without his knowledge, authority or participation, he will not he guilty of the publication of the libel, unless the publication is made

through a want of ordinary care and precaution on his part, to prevent the same.

*Defendant's request No. 7.*

If the jury are satisfied that the words set out in the indictment are libelous, and they find said words were published without the knowledge, participation or consent of the defendant, and that the defendant exercised ordinary care to prevent libelous publications in his said newspaper, it will be the duty of the jury to acquit the defendant, notwithstanding said libelous words were published in said newspaper.

*Defendant's request No. 9.*

In no event can proof of malice take the place of proof of publication itself. It is wholly immaterial whether the defendant had malice towards Charles P. Griffin, unless it is established beyond a reasonable doubt, that the words were published by the defendant either knowingly and intentionally, or through want of ordinary and reasonable care on his part.

*Defendant's request No. 12.*

The jury will find the meaning of the words charged in the indictment from all the proofs in the case, and in arriving at such meaning, they may take into consideration the whole article published in said newspaper, of which the alleged libelous words form a part.